## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

**CINDY KLEGER**, et al.,         *

    *Plaintiffs,*               *

    v.                    *     **Civil Case No: 1:24-CV-00095-JMC**

**DORCHESTER COUNTY,**
**MARYLAND,** *et al.*,

                          *

    *Defendants.*

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM OPINION

Plaintiffs, Cindy Kleger (individually and as the personal representative of the Estate of Wyatt Allan Young) and Roger Allan Young, filed the present lawsuit on January 10, 2024, against Dorchester County, Maryland ("Dorchester County"), Don Satterfield, Davion Jammal Batson, Marquet Robinson, Arthur Nelson, and "additional unidentified officers" alleging violations of 42 U.S.C. § 1983, the Maryland Declaration of Rights, negligence, gross negligence, wrongful death, survivorship, and negligent supervision. (ECF No. 1). Before the Court are several motions: (1) Defendant Dorchester County's Motion to Dismiss (ECF No. 30); (2) Defendant Batson's Motion to Dismiss or, in the alternative, Motion for Summary Judgment (ECF No. 40); (3) Defendant Robinson's Motion to Dismiss or, in the alternative, Motion for Summary Judgment (ECF No. 41); (4) Defendant Nelson's Motion to Dismiss (ECF No. 47); and (5) Plaintiffs' Motion to Waive Notice for Good Cause Under the Maryland Local Government Tort Claims Act ("LGTCA") (ECF No. 35).[1] The motions are fully briefed (ECF Nos. 34, 36, 42, 48, 55, 56, 57, 58, 59, 66, 67, 68) and no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons that follow,

---

[1] The Court previously approved Plaintiffs' notice of voluntary dismissal regarding Defendant Satterfield only. *See* (ECF Nos. 53, 54).

Defendant Dorchester County's motion will be granted in part and denied in part; Plaintiffs' motion will be denied as moot; Defendant Batson's motion will be granted in part and denied in part; Defendant Robinson's motion will be granted in part and denied in part; and Defendant Nelson's motion will be granted in part and denied in part.

## I.    BACKGROUND

### A. The Parties

Plaintiff Kleger is the surviving parent of Wyatt Allan Young ("Mr. Young").  (ECF No. 1 at 3–4).[2] Plaintiff Roger Allan Young was the natural father of Mr. Young.  *Id.*  Defendant Dorchester County is "an entity of local government of the State of Maryland" that owns and operates the Dorchester County Detention Center ("DCDC") through its Department of Corrections ("DOC").  *Id.* at 2, 4.  At all times relevant to Plaintiffs' claims, Defendant Satterfield was the director of the DOC and warden of the DCDC, and Defendants Batson, Robinson, and Nelson were correctional officers with the DCDC.  *Id.* at 4–5.  "All other unidentified DCDC Correctional Officers whose conduct is referred to" throughout Plaintiffs' Complaint were "responsible for the pattern and practice of misconduct" alleged in Plaintiffs' Complaint who were "acting under color of state law."  *Id.* at 5.

### B. Factual Background

On or about January 8, 2021, Plaintiff Kleger filed a petition in the Wicomico County District Court for an emergency evaluation to be performed on Mr. Young because she was concerned with Mr. Young's mental and physical well-being.  *Id.*  Judge Bruce Wade of that court granted the emergency petition that same day via court order ("Emergency Order").  *Id.* at 6.

---

[2] When the Court cites to a specific page number or range of page numbers, the Court is referring to the page numbers located in the electronic filing stamps provided at the top of every electronically filed document.  At the motion to dismiss stage, the Court "accept[s] as true all well-pleaded facts and construe[s] them in the light most favorable to the plaintiff."  *Harvey v. Cable News Network, Inc.*, 48 F.4th 257, 268 (4th Cir. 2022).

On January 9, 2021, the Wicomico County Sheriff's Office ("WCSO") issued a bulletin for Mr. Young, in which it referred to Mr. Young as a "critically missing person" that had "relapsed and made suicidal threats." *Id.* The WCSO faxed the Emergency Order to the Maryland State Police ("MSP") that same afternoon at approximately 1:56 PM. *Id.* Plaintiff Kleger then called the MSP at approximately 3:24 PM to inform the MSP that Mr. Young needed to be taken in for an emergency evaluation. *Id.* MSP arrested Mr. Young at approximately 6:05 PM that same day before taking Mr. Young to the DCDC. *Id.*

Defendant Nelson "was the Processing Shift Supervisor upon Mr. Young's admission into DCDC" who "conducted the drug assessment and counseling for Mr. Young and subsequently authorized the segregation of Mr. Young into the Medical Area for detox upon Mr. Young's admission into the facility." *Id.* at 6. Defendant Robinson also assisted in admitting Mr. Young and "signed off on Mr. Young's Cigarettes/Drug/Alcohol Test Results upon Mr. Young's admission into the facility." *Id.* at 6–7. Defendant Robinson knew at that time that Mr. Young tested positive for marijuana, methadone, and morphine upon his entry to the facility. *Id.* at 7.

Mr. Young's detox segregation, after receiving his screening results, resulted in Defendant Nelson "assign[ing] Mr. Young to be housed in a cell by himself in the Medical Area of the facility, with DCDC employees performing a medical check on Mr. Young every thirty (30) minutes." *Id.* Plaintiff Kleger repeatedly called DCDC via telephone beginning January 9, 2021, after Mr. Young was booked into the facility, to voice ongoing concerns about Mr. Young's well-being. *Id.* DCDC staff informed Plaintiff Kleger each time that Mr. Young was "fine." *Id.*

On January 10, 2021, Defendant Robinson was assigned to the section of the medical area housing Mr. Young. *Id.* This meant that Defendant Robinson was responsible for the routine medical checks on Mr. Young that day. *Id.* "Surveillance video shows that Defendant Robinson

walked through the hall and very briefly looked through the glass of the door on Mr. Young's cell at approximately 10:40 AM" that day before initialing his check sheet in the hallway. *Id.* This was the last time that Defendant Robinson initialed the check sheet. *Id.* Surveillance footage supposedly indicates that the next time that any DCDC staff entered the area was not until 11:35 AM, when Defendant Robinson walked into the hallway with a meal cart. *Id.*

According to the alleged surveillance footage, Defendant Robinson attempted to enter Mr. Young's cell when attempting to provide Mr. Young with his meal at some time after 11:35 AM. *Id.* at 8. Defendant Batson then walked toward Mr. Young's cell before opening it and entering. *Id.* "When Defendant Batson entered Mr. Young's cell, he discovered that one side of a ripped bed sheet was tied around Mr. Young's neck and the other side was tied around the door hinge, and that Mr. Young was hanging from it." *Id.* All individuals present ran in and out of Mr. Young's cell seeking aid before EMS staff was dispatched to Mr. Young's cell shortly thereafter. *Id.* EMS personnel then pronounced Mr. Young dead at approximately 11:47 AM on January 10, 2021. *Id.* Robert Fitzgerald telephoned Plaintiff Kleger at approximately 1:40 PM that afternoon informing Plaintiff Kleger of her son's death, but Mr. Fitzgerald "would not disclose to her what happened." *Id.* It was later determined that Mr. Young died of asphyxia by hanging. *Id.* at 9. Defendant Batson was the on-duty shift commander and Defendant Robinson's supervisor at the time of Mr. Young's death. *Id.* at 10.

The ensuing investigation into Mr. Young's death revealed that "the Check Sheet had been initialed for each thirty-minute block of time all the way down to the 12:00 PM check slot by Defendant Robinson." *Id.* at 9. However, the video surveillance footage allegedly demonstrates that Defendant Robinson "was late making the 10:30 AM check" because he completed the check closer to 10:40 AM, and that "This was the last time that Defendant Robinson, or anyone else, was

seen initialing the Check Sheet before Mr. Young's death." *Id.* Defendant Robinson was supposed to complete the 11:00 AM and 11:30 AM checks, but he failed to do so and "fraudulently wrote that he had already performed" those checks after completing his 10:30 AM check at 10:40 AM. *Id.* Plaintiffs allege that Defendant Robinson "more likely than not" would have discovered Mr. Young while Mr. Young "was in the process of hanging himself" if he had actually completed those checks given the amount of time necessary for Mr. Young to strip the bed sheets, tie or weave the sheets together to create a noose, tie the sheets to the hinge of the door, and "hang himself through the process of strangulation as opposed to the breaking of his neck, which is a very inefficient way of committing suicide." *Id.* The individual housed in the cell across from Mr. Young at the time submitted a written statement on January 10, 2021, asserting that Mr. Young "was at his window with a noose in his hand for about 5-10 minutes and then [sic] didn't see him anymore." *Id.* at 10 (sic in original).

Based on the foregoing allegations, Plaintiffs' lawsuit alleges that: Defendants Dorchester County, Nelson, and Robinson violated Mr. Young's Fourth, Eighth, and Fourteenth Amendment rights under 42 U.S.C. § 1983 by failing to protect Mr. Young from suicidal action (Count I); Defendants Dorchester County, Nelson, and Robinson violated Mr. Young's rights under Articles 16, 19, 24, 25, and 26 of the Maryland Declaration of Rights by failing to protect Mr. Young from suicidal action (Count II); all Defendants were negligent (Count III); all Defendants were grossly negligence (Count IV); all Defendants are liable for Mr. Young's wrongful death (Count V); all Defendants are liable to Plaintiff Kleger, as personal representative of Mr. Young's estate, under principles of survivorship (Count VI); and Defendants Dorchester County, Satterfield, and Batson negligently supervised the employees responsible for failing to supervise Mr. Young (Count VII).

## II.      LEGAL STANDARD

The purpose of Federal Rule of Civil Procedure 12(b)(6) "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."  *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)) (internal quotations omitted).  To survive a Rule 12(b)(6) motion to dismiss, "detailed factual allegations are not required, but a plaintiff must provide the grounds of his entitlement to relief," which requires "more than labels and conclusions, or a formulaic recitation of the elements of a cause of action." *Petry v. Wells Fargo Bank, N.A.*, 597 F. Supp. 2d 558, 561–62 (D. Md. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007)) (internal quotations omitted).  In considering a motion to dismiss, "the Court must accept the complaint's allegations as true, and must liberally construe the complaint as a whole."  *Humphrey v. Nat'l Flood Ins. Program*, 885 F.Supp. 133, 136 (D. Md. 1995) (internal citations omitted).  The Court must also construe the facts and reasonable inferences from the facts in the light most favorable to the plaintiff.  *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997); *see also Petry*, 597 F. Supp. 2d at 562 ("Once a claim has been stated adequately . . . it may be supported by showing any set of facts consistent with the allegations in the complaint.") (quoting *Twombly*, 550 U.S. at 546).

"As a general rule, the court does not consider extrinsic evidence at the motion to dismiss stage . . . ."  *Reamer v. State Auto. Mut. Ins. Co.*, 556 F. Supp. 3d 544, 549 (D. Md. 2021) (other citation omitted).  However, "the court may consider, without converting the motion to dismiss into one for summary judgment, documents attached to the complaint as exhibits, and documents attached to a motion to dismiss if the document is 'integral to the complaint and there is no dispute about the document's authenticity.'"  *Id.* (quoting *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159,

166 (4th Cir. 2016)).  "A document is 'integral' to the complaint if its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'"  *Reamer*, 556 F. Supp. 3d at 59 (citing *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011)).

Various Defendants style their motions as motions to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56.  "A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure." *Pevia v. Hogan*, 443 F. Supp. 3d 612, 625 (D. Md. 2020).  The Court has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it."  *Id.* at 626 (citation omitted).  "Ordinarily, summary judgment is inappropriate where the parties have not had an opportunity for reasonable discovery." *Id.*; *see also Sol v. M&T Bank*, No. 8:22-CV-02999-AAQ, 2024 WL 327086, at *4 (D. Md. Jan. 29, 2024) (collecting cases).  "Generally, if a party believes that summary judgment is procedurally inappropriate because the party needs discovery to properly oppose the motion, the party should file a Rule 56(d) affidavit informing the court of such."  *Sol*, 2024 WL 327086, at *4.  "'Even in the absence of a Rule 56(d) affidavit,' a judge maintains 'complete discretion' to decline to convert a motion to dismiss to one for summary judgment."  *Id.* (quoting *Woodbury v. Victory Van Lines*, 286 F. Supp. 3d 685, 693 (D. Md. 2017)).

Here, converting Defendant Batson's and Defendant Robinson's motions to dismiss into motions for summary judgment is premature because discovery has not yet commenced. Additionally, Plaintiffs filed Rule 56(d) affidavits in their oppositions to both motions.  *See* (ECF No. 56-15; ECF No. 57-16).  Those affidavits set forth the reasons that Plaintiffs believe additional

discovery is warranted, specific examples of the discovery materials that Plaintiffs believe will support their claims and how, and Plaintiffs further affirm in their oppositions that they "have no interest in pursuing claims that are not supported after full discovery." (ECF No. 56 at 16; ECF No. 57 at 13). The Court therefore declines to convert Defendant Batson's and Defendant Robinson's motions to dismiss into motions for summary judgment and will apply the Rule 12(b)(6) standard in assessing both.

## III.   ANALYSIS

### A.   Defendant Dorchester County's Motion to Dismiss

#### I.   *Count I Must be Dismissed Against Defendant Dorchester County*

Defendant Dorchester County first argues that Count I should be dismissed—as asserted against it—because Dorchester County's "liability under § 1983 may only be predicated on an unlawful pattern or practice, and not under the doctrine of *respondeat superior*." (ECF No. 30-1 at 2) (citing *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658 (1987)).[3] Plaintiffs concede that "While [Dorchester County] cannot be sued *directly* as a tortfeasor under § 1983, with the exception of a *Monell* claim, *which is not a claim Plaintiff has made in this lawsuit*, the State of Maryland has created a system of indemnification that shifts liability for judgments from officers to governmental entities depending on the resolution of certain issues at trial." (ECF No. 34 at 12) (first emphasis in original, second emphasis added). "As a result, [Dorchester County] is a necessary party to Plaintiff[s'] Fourth, Eighth, and Fourteenth Amendment claims in Count I because resolution of those claims necessarily includes adjudication of issues that impact the scope

---

[3] In other words, Defendant Dorchester County asserts that Count I is not pled as a cause of action under *Monell*, and therefore any attempt to hold Dorchester County responsible for the torts of its employees is otherwise impermissible under § 1983. *See Johnson v. Balt. Police Dep't*, 500 F. Supp. 3d 454, 459 (D. Md. 2020) ("In *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 [] (1978), the Supreme Court explained that a municipality is subject to suit under § 1983 based on the unconstitutional actions of individual defendants where those defendants were executing an official policy or custom of the local government that violated the plaintiff's rights.").

of [Dorchester County's] liability." *Id.* Plaintiffs therefore clarify that Count I is not raised against Dorchester County under *Monell*, but that Dorchester County is nevertheless liable for the torts of its employees through the Maryland Code's provisions on municipal liability for judgments against its employees.

"Under § 1983, a plaintiff may file suit against any person who, acting under color of state law, 'subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Johnson*, 500 F. Supp. 3d at 458 (quoting 42 U.S.C. § 1983). The Supreme Court established the circumstances under which a municipality may be subject to suit under § 1983 for the unconstitutional actions of individual defendants in *Monell*, but this Court has repeatedly made clear that "there is no vicarious liability under § 1983." *Id.* at 460; *see also Nicholson v. Balt. Police Dep't*, No. CV DKC 20-3146, 2021 WL 1541667, at *6 (D. Md. Apr. 20, 2021) ("[Municipal] liability [under § 1983] attaches 'only where the municipality *itself* causes the constitutional violation at issue.' There can be no vicarious liability under § 1983.") (emphasis in original) (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)).

Here, Plaintiffs concede that Count I as asserted against Dorchester County is not asserted under *Monell*. Rather, Count I as asserted against Dorchester County is predicated on Dorchester County being liable for the acts of its individual employee correctional officials. Count I is therefore dismissed against Dorchester County. *See Brooks v. St. Charles Hotel Operating, LLC.*, No. CV DLB-23-0208, 2023 WL 6244612, at *9 n.6 (D. Md. Sept. 26, 2023) ("To the extent that [plaintiff] attempts to advance a *respondeat superior* theory of liability against the County in his § 1983 claim, he cannot do so."); *Horn v. City of Seat Pleasant, Md.*, 57 F. Supp. 2d 219, 227 (D.

Md. 1999) ("A local governmental entity cannot be held liable for a violation of § 1983 based on the theory of respondeat superior.  Instead, a plaintiff must allege that the local governmental entity is directly liable because of an official policy, practice or custom.").

       2.  *Dorchester County is Entitled to Immunity With Respect to Counts III Through VII*

Plaintiffs' indemnification and liability concerns seem to be more directly in response to Dorchester County's second argument for dismissal—that Dorchester County enjoys governmental immunity from common law tort claims, thereby barring Counts III through VII from being pursued against it.  (ECF No. 30-1 at 2–3).  "A state's right to governmental immunity is 'deeply ingrained in Maryland law' and may not be waived in the absence of express or implied statutory authorization." *Vincent v. Prince George's Cnty., Md.*, 157 F. Supp. 2d 588, 594 (D. Md. 2001) (quoting *Nam v. Montgomer Cnty.*, 127 Md. App. 172, 182 (1999)).  "A municipality, such as [a] County, is also entitled to governmental immunity." *Id.*; *see also Edwards v. Mayor & City Council of Balt.*, 176 Md. App. 446, 466 (2007) ("At common law, local governments in Maryland enjoy governmental immunity in negligence actions when the activity forming the basis of the lawsuit is 'governmental,' rather than 'proprietary,' in nature, unless such immunity is waived statutorily by the General Assembly.").

Maryland courts have also routinely held that "the [LGTCA] does not specifically waive immunity for common law tort claims against a County or municipality in its own capacity, for governmental actions." *Clark v. Prince George's Cnty.*, 211 Md. App. 548, 558 (2013).  "The sole waiver of immunity provision in the LGTCA is the waiver of the 'governmental or sovereign immunity to avoid the duty to defend or indemnify an employee.'" *Balt. Police Dep't v. Cherkes*, 140 Md. App. 282, 323 (2001) (quoting Md. Code Ann., Cts. & Jud. Proc. § 5-303(b)(2)).

A county detention center is "unquestionably a governmental activity," making Dorchester County presumably immune from suit regarding potential torts arising during the operation of the DCDC. *McMahon v. Cnty. Comm'rs of Kent Cnty.*, No. CIV. JFM-13-490, 2013 WL 2285378, at *5 (D. Md. May 21, 2013). Plaintiffs rebut that their tort claims against Dorchester County are nevertheless proper because Dorchester County "is responsible for indemnifying its employees for judgments entered against them" and because Dorchester County is "still a necessary party given its indemnification obligation pursuant to the LGTCA." (ECF No. 34 at 12, 19). Plaintiffs additionally argue that, under *DiPino v. Davis*, 354 Md. 18 (1999), Maryland's highest court concluded that "a local government cannot claim immunity against tort claims arising from the violation of a plaintiff's constitutional rights." (ECF No. 34 at 13–14).

The Court must reject Plaintiffs' arguments. Plaintiffs' argument hinges primarily on the indemnification and liability provisions of the LGTCA, but this Court has already explained that "This provision only requires municipal governments to defend and indemnify their employees for tortious acts committed within the scope of employment; it *does not* permit plaintiffs to sustain civil suits directly against the municipal government itself." *McMahon*, 2013 WL 2285378, at *5 (emphasis added) (citing *Gray-Hopkins v. Prince George's Cnty.*, 309 F.3d 224, 232 (4th Cir. 2002)). In fact, Judge Chasanow of this Court rejected this exact same argument by the exact same counsel roughly four months ago in *Rodwell v. Wicomico County, Maryland*, No. CV DKC 22-3014, 2024 WL 1178202 (D. Md. Mar. 19, 2024).

In *Rodwell*, the plaintiff argued that Wicomico County was not immune from tort liability under the doctrine of governmental immunity because (1) the LGTCA provides an express statutory waiver of immunity for torts committed within the scope of a county employee's employment; or, in the alternative, (2) that Wicomico County was "still a necessary party to this

case as a potential indemnitor." *Id.* at *4. In rejecting that plaintiff's argument, Judge Chasanow

explained the following:

> Plaintiff conflates Defendant County's duties to defend and indemnify its employee in a tort suit with a waiver of sovereign immunity. [M]unicipalities are generally immune from common law tort suits when engaged in governmental, as opposed to proprietary, acts. [T]he operation of prisons and jails is a government function. Thus, Defendant County is immune as to common law tort claims asserted against it based on torts committed by employees of its prisons and jails.
>
> Plaintiff is correct that § 5-303(b) of the LGTCA requires Defendant County to indemnify a judgment against its employee for damages resulting from a tortious act committed by the employee without malice or gross negligence in the scope of employment. The LGTCA, however, does not permit a plaintiff to name Defendant County directly in a common law tort suit.
>
> Plaintiff relies on *Baltimore City Police Department v. Esteppe*, 247 Md. App. 476 (2020), *aff'd*, 476 Md. 3 (2021), for the proposition that a local government's liability for any judgment can be appropriately addressed within the underlying tort action against the employee. Plaintiff argues that it would be more efficient for Defendant County to remain in this suit rather than requiring Plaintiff to bring another suit to enforce Defendant County's obligation to pay an underlying judgment. In *Esteppe*, the plaintiff obtained a judgment against a former police officer. In the same action as the underlying tort suit, the plaintiff filed a motion for declaratory relief to recover the judgment from the police department and the city, who had previously been dismissed from the suit.
>
> The state courts ruled that, if indemnification is disputed after a favorable verdict in the underlying tort action, a tort plaintiff may proceed to establish a local government's liability under the LGTCA either in the underlying tort action or in a separate action at a later date. Whichever mechanism is chosen, however, two requirements must be met: (1) the local government must be a party to the proceeding, and (2) plaintiff must make a claim to enforce the obligation.
>
> Here, Defendant County is a party to the suit. Plaintiff's current complaint does not seek a declaration that Defendant County would be liable to pay a judgment entered against one of its employees. Rather, the Second Amended Complaint seeks to hold Defendant County directly liable for damages resulting from torts committed by its employees. Because the LGTCA does not permit a plaintiff to sue the local government directly in a common law tort suit, the claims against Defendant County will be dismissed without prejudice from Counts I and II, but Defendant County will not be dismissed from the action. Plaintiff will have the opportunity to file a third amended complaint seeking a declaration that, if Defendant Officers are found liable for any of the tort claims, Defendant County must pay the judgment.

*Id.* at *5 (internal quotations and citations omitted).

Plaintiffs in this case again conflate Dorchester County's duty to defend and indemnify its employees in a tort suit with a waiver of governmental immunity. The Court therefore rejects Plaintiffs' arguments on this issue for the same reasons expressed in *Rodwell*. Counts III through VII are accordingly dismissed without prejudice as raised against Defendant Dorchester County. However, as in *Rodwell*, Plaintiffs will have an opportunity to file an amended complaint within twenty-one (21) days from the date of this Memorandum Opinion and its accompanying Order seeking a declaration that, if the individual Defendant correctional officers are found liable for any of the tort claims, Defendant Dorchester County must pay the judgment.

### B. Plaintiffs' Motion to Waive Notice for Good Cause Under the LGTCA

Defendant Dorchester County also argues in its motion to dismiss that Counts II–VII must be dismissed "because Plaintiffs failed to comply with the notice requirement in the [LGTCA]." (ECF No. 30-1 at 3). Plaintiffs opposed this argument in their opposition but also filed a separate Motion to Waive Notice for Good Cause Under the LGTCA, which was opposed by Defendant Dorchester County and Defendant Nelson. (ECF Nos. 35, 42, 48).[4] The Court will accordingly pivot to assessing Plaintiffs' motion at this juncture before assessing the remaining Defendants' motions to dismiss.

The LGTCA provides that, subject to certain exceptions, "an action for unliquidated damages may not be brought against a local government or its employees unless the notice of the claim . . . is given within 1 year after the injury." Md. Code Ann., Cts. & Jud. Proc. § 5-304(b)(1) (hereinafter abbreviated as "LGTCA"). "The LGTCA's notice requirement is intended to protect

---

[4] Defendant Nelson's opposition "adopts and incorporates" the arguments raised by Defendant Dorchester County. (ECF No. 48 at 1).

a government entity from 'meretricious claimants and exaggerated claims by providing a mechanism whereby the municipality or county would be apprised of its possible liability at a time when it could conduct its own investigation.'" *Taylor v. Somerset Cnty. Comm'rs*, No. CV RDB-16-0336, 2016 WL 3906641, at *8 (D. Md. July 19, 2016) (quoting *Williams v. Maynard*, 359 Md. 379, 389–90 (2000)).  Notice under the LGTCA "shall be in writing and shall state the time, place, and cause of the injury." LGTCA § 5-304(b)(2).  "[I]f the defendant local government is a county, the notice required under this section shall be given to the county commissioners or county council of the defendant local government." *Id.* § 5-304(c)(2).

The LGTCA's notice requirement "does not apply if, within 1 year after the injury, the defendant local government has actual or constructive notice of: (1) The claimant's injury; or (2) The defect or circumstances giving rise to the claimant's injury." *Id.* § 5-304(e).  Alternatively, "[t]he notice requirement of the LGTCA may be waived for good cause and lack of prejudice to the defendant." *Quigley v. United States*, 865 F. Supp. 2d 685, 692 (D. Md. 2012); *see* LGTCA § 5-304(d) ("[U]nless the defendant can affirmatively show that its defense has been prejudiced by lack of required notice, upon motion and for good cause shown the court may entertain the suit even though the required notice was not given.").  In other words, there are two caveats to the LGTCA's notice requirement: (1) the notice requirement is not applicable if the defendant has actual or constructive notice of the claimant's injury or the defect or circumstances giving rise to the claimant's injury; and (2) if the notice requirement applies but was not satisfied, the Court may nevertheless entertain tort actions falling within its scope if the claimant shows good cause to do so.

The first caveat is often referred to as the doctrine of substantial compliance.  *See Hine v. Prince George's Cnty., Md.*, No. CV TDC-20-2929, 2021 WL 5882615, at *3 (D. Md. Dec. 9,

2021).  "Substantial compliance occurs 'when notice is provided to the entity responsible for investigating the tort claim,'" and "can also be achieved when the local government is made aware of its possible liability."  *Id.* (quoting *White v. Prince George's Cnty.*, 163 Md. App. 129, 147 (2005)).  Accordingly, Maryland courts:

> [H]ave held that a plaintiff substantially complies with the LGTCA notice requirements when the plaintiff: (1) makes some kind of effort to provide the requisite notice; (2) in fact gives some kind of notice; (3) gives requisite and timely notice of facts and circumstances giving rise to the claim; and (4) provides notice that fulfills the LGTCA notice requirement's purpose of apprising the 'local government of its possible liability at a time when [the local government] could conduct its own investigation.'

*Truant v. Persuhn*, No. CV RDB-23-00579, 2023 WL 8600552, at *7 (D. Md. Dec. 12, 2023) (quoting *Ellis v. Hous. Auth. of Balt. City*, 436 Md. 331 (2013)).

Regarding the second caveat—situations under which the Court may excuse a party's failure to comply with the LGTCA's notice requirement—Maryland's highest court recently explained:

> By the language of [LGTCA § 5-304(d)], the burden is on the claimant first to show 'good cause.'  Then, if the local government cannot 'affirmatively show that its defense has been prejudiced by lack of required notice,' the court 'may' hear the cause despite the faulty notice.  This 'good cause' exception leaves the courts some discretion in enforcing the notice requirement, and allows a court, in certain circumstances, to avoid an unjust result.

*Prince George's Cnty., Md. v. Longtin*, 419 Md. 450, 467 (2011).  Thus, "[t]he Defendants' burden to show prejudice does not arise until after a plaintiff establishes 'good cause' to justify the failure to comply with the notice requirement."  *Curtis v. Pracht*, 202 F. Supp. 2d 406, 414 (D. Md. 2002).  "Good cause exists when a claimant prosecutes a claim with that degree of diligence that an ordinarily prudent person would have exercised under the same or similar circumstances."  *Huggins v. Prince George's Cnty., Md.*, 683 F.3d 525, 538 (4th Cir. 2012).  "A court's determination that good cause for failure to comply with the LGTCA's notice requirements has or

has not been shown is reviewed for abuse of discretion." *Id.* (citing *Hargrove v. Mayor and City Council of Balt.*, 146 Md. App. 457 (2002)).

Beginning with whether the LGTCA notice requirement was satisfied under LGTCA § 5-304(e), Plaintiffs' Complaint alleges generally that "Defendants had actual or constructive notice of Mr. Young's death and the circumstances giving rise to Mr. Young's death within one year after Mr. Young's death, pursuant [to] § 5-304(e) of the [LGTCA], and Plaintiffs are in full compliance with said Act insofar as it applies to the instant case. All conditions have been fully satisfied precedent to filing suit." (ECF No. 1 at 3). Plaintiffs' opposition to Defendant Dorchester County's motion to dismiss further asserts that "It is obvious that Defendant[s] had actual notice and sufficient time to perform a timely investigation—as Defendant[s] did, in fact, conduct an investigation beginning the same day that Mr. Young was found deceased at DCDC." (ECF No. 34 at 24). Plaintiffs effectively argue in their opposition to Dorchester County's motion to dismiss then that LGTCA § 5-304(e) applies—and notice under the LGTCA was not required—because Defendants began investigating Mr. Young's death shortly thereafter, demonstrating that Defendants had actual or constructive notice of Plaintiffs' claims. Plaintiffs go one step further in responding to Dorchester County's opposition to Plaintiffs' motion to waive notice by asserting that they did, in fact, put Defendants on notice of Plaintiffs' claims within one year of Mr. Young's death when they sent a "preservation letter" to Defendants regarding the handling of evidence related to Mr. Young's death. (ECF No. 55 at 7).[5]

---

[5] As a threshold matter, the Court will consider the preservation letter, which is attached to Plaintiffs' motion as an exhibit. Even assuming *arguendo* that the Court is precluded from considering extrinsic evidence in analyzing Plaintiffs' motion without converting it (similar to the standard applicable to analyzing Defendants' various motions), the Court finds that the allegations in Plaintiffs' Complaint concerning notice rely heavily upon the terms and effects of that preservation letter and the preservation letter is therefore "integral to the complaint." *See, e.g.*, *Rucker v. Harrison*, No. GJH-16-371, 2018 WL 3105925, at *2 (D. Md. June 25, 2018), *aff'd*, 773 F. App'x 156 (4th Cir. 2019). This conclusion is further supported by other instances in which this Court has found documents to be integral to a complaint where they necessarily impacted a plaintiff's right to bring tort actions by satisfying conditions precedent. *See, e.g.*, *Parker v. U.S. Postal Serv.*, No. CV RDB-16-562, 2016 WL 7338412, at *4 (D. Md. Dec. 19, 2016).

Here, the Court rejects Plaintiffs' argument that the investigation into Mr. Young's death itself made the LGTCA's notice requirement inapplicable. Maryland courts have opined in similar contexts that simply the happening of an incident does not qualify as substantial compliance with Maryland tort claim acts' notice requirements. For instance, Judge Hollander of this Court assessed in *Francis v. Maryland* whether a plaintiff substantially complied with the Maryland Tort Claims Act's ("MTCA") similar notice requirement in light of the plaintiff's argument that the defendant (State of Maryland) "had actual notice, or at least constructive notice" of the plaintiff's claims because the State launched an investigation into the underlying conduct giving rise to that plaintiff's claims. No. CV ELH-21-1365, 2023 WL 2456553, at *25 (D. Md. Mar. 10, 2023). The Court rejected that argument, concluding instead that the plaintiff "did not satisfy the doctrine of substantial compliance because the State's own investigation of the incident is not a substitute for notice." *Id.* at *27 (citing *Johnson v. Md. State Police*, 331 Md. 285, 291–92 (1993)).

Although the facts in *Francis* are not identical to those in the present case, the Court's analysis regarding what constitutes substantial compliance under Maryland's tort claims acts still holds true. This conclusion was further bolstered by the Court several months later in *Brooks v. St. Charles Hotel Operating, LLC*, in which it again clarified that, under the MTCA, "Substantial compliance is not satisfied if a plaintiff fails to provide notice and 'rel[ies] solely on the State's own efforts in acquiring information about the incident.'" 2023 WL 6244612, at *5. In fact, the Court's conclusion in *Brooks* was expressly based on case law highlighting that, "[i]n the analogous LGTCA context, Maryland courts have made clear that substantial compliance is only satisfied where a plaintiff 'not only endeavors, or makes some effort, to provide the [required] information . . . to the [entity] responsible for investigating tort claims, but *actually does so*.'" *Id.* (quoting *Hansen v. City of Laurel*, 420 Md. 670, 692 n.24 (2011)) (emphasis in *Brooks*). The

Court therefore rejects Plaintiffs' argument that the LGTCA notice provision is inapplicable in this case because Defendants had actual or constructive knowledge of Plaintiffs' claims based on their investigation into Mr. Young's suicide alone.

However, Plaintiffs have demonstrated substantial compliance with the LGTCA's notice requirement through the preservation letter. The preservation letter is dated March 31, 2021—less than three months after Mr. Young's suicide—and expressly "request[s] preservation of all evidence relating to [Mr. Young's death]." (ECF No. 55-1 at 1). The letter further indicates that this request was made with reference to "the claims the Estate of Wyatt A. Young may have against Dorchester County Detention Center[,] Maryland State Police, and/or the State of Maryland related to the death of Mr. Young on or about January 10, 2021 while in custody." *Id.* at 2. The Court finds that the preservation letter and its details in warning Defendants against the destruction of evidence related to Mr. Young's death as it may relate to Defendants' future liability satisfies the standards espoused in *Truant* and its origins. Namely, that: (1) Plaintiffs made at least some kind of effort to provide Defendants with the requisite notice; (2) Plaintiffs have plausibly demonstrated that they did, in fact, send the preservation letter; (3) the preservation letter was sent shortly after Mr. Young's death and put Defendants on clear notice of the facts giving rise to their potential claims (Mr. Young's suicide while in custody); and (4) the preservation letter apprised Defendants of their possible liability regarding Mr. Young's death at a time when Defendants could (and did) conduct their investigation(s).

Alternatively, Plaintiffs' Complaint sufficiently alleges compliance with the LGTCA's notice requirement at the motion to dismiss stage regardless of whether the Court even considered the preservation letter. *See, e.g.*, Fed. R. Civ. P. 9(c) ("In pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or have been performed."); *Hansen*,

420 Md. at 697 n.16 ("Maryland appellate caselaw states that conditions precedent must be pleaded normally in a complaint, and that the LGTCA notice requirement is one such condition precedent."); *Hansen*, 420 Md. at 698 n.2 (Adkins, J., dissenting) ("Here, all Hansen was required to do was allege generally that 'all conditions precedent have been performed or have occurred.'"); *SH Franchising, LLC v. Newlands Homecare, LLC*, No. CV CCB-18-2104, 2019 WL 356658, at *5 (D. Md. Jan. 29, 2019) ("[F]ailure to satisfy a condition precedent is ordinarily considered an affirmative defense, and an affirmative defense typically is not considered at the motion to dismiss stage unless the facts necessary to establish it are available on the face of the pleadings.") (cleaned up).  Dismissal is therefore not warranted on this ground.  Plaintiffs' motion will be denied as moot given the Court's conclusions that, at minimum, Plaintiffs' Complaint sufficiently alleges compliance with the LGTCA's notice requirement at the motion to dismiss stage or, alternatively, that considering the preservation letter demonstrates Plaintiffs' substantial compliance with the LGTCA's notice requirement (and thus Plaintiffs need not demonstrate good cause for non-compliance).

### C. Defendant Batson's Motion to Dismiss or, in the Alternative for Summary Judgment

#### 1. *Defendant Batson's Argument Regarding Lack of Notice Under the LGTCA is Unpersuasive*

Turning to Defendant Batson's motion, Defendant Batson first adopts "the reasons stated in Section C of the County's Motion to Dismiss" regarding notice under the LGTCA as grounds for dismissal.  (ECF No. 40-1 at 6).  Given that the Court rejected those arguments for the reasons above and that Defendant Batson offers no additional argument on the matter, the Court likewise rejects this as a ground to dismiss Plaintiffs' claims against Defendant Batson.[6]

---

[6] The Court therefore draws no conclusion regarding Plaintiffs' argument that the LGTCA's notice requirement "is only relevant as to whether Dorchester County will be held financially liable for Defendant Batson's actions as a Defendant County employee—not as to whether Defendant Batson is himself liable."  (ECF No. 56 at 13); *see also*

2.  *Defendant Batson is Not Entitled to Public Official Immunity at This Time*

Defendant Batson next argues that he is entitled to public official immunity from Plaintiffs' negligence and gross negligence claims.  *Id.*  "In Maryland, public official immunity is recognized both at common law and by statute."  *Cherkes*, 140 Md. App. at 328.  That statute is codified at Md. Code Ann., Cts. & Jud. Proc. § 5-507, which provides: "An official of a municipal corporation, while acting in a discretionary capacity, without malice, and within the scope of the official's employment or authority shall be immune as an official or individual from any civil liability for the performance of the action."  *Id.* § 5-507(a)(1).  The doctrine aims to "permit [public] officers . . . to make the appropriate decisions in an atmosphere of great uncertainty" because "holding [public] officers liable in hindsight for every injurious consequence would paralyze the functions of law enforcement."  *Cherkes*, 140 Md. App. at 328.  For common law public official immunity to apply:

> (1) the actor must be a public official, rather than a mere government employee or agent; (2) the conduct must have occurred while the actor was performing discretionary, as opposed to ministerial acts; and (3) the actor must have performed the relevant acts within the scope of his official duties.

*City of District Heights v. Denny*, 123 Md. App. 508, 516 (1998).

"If those three conditions are met, the public official enjoys a qualified immunity in the absence of 'malice.'"  *Id.*  "The actual malice needed to defeat official immunity requires an act without legal justification or excuse, but with an evil or rancorous motive influenced by hate, the purpose being to deliberately and willfully injure the plaintiff."  *Leese v. Balt. Cnty.*, 64 Md. App. 442, 480, (1985), *cert. denied*, 305 Md. 106, (1985), *overruled on other grounds by Woodruff v. Trepel*, 125 Md. App. 381 (1999).  Maryland's highest court then expanded this "exception" to

---

(ECF No. 68 at 2).  Even assuming that Plaintiffs are misguided, this would not change the Court's conclusion for the reasons explained above.

public official immunity to include "gross negligence" in *Cooper v. Rodriguez*, 443 Md. 680, 723–24 (2015). *Cooper* defined "gross negligence" as follows:

> [A]n intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and also implies a thoughtless disregard of the consequences without the exertion of any effort to avoid them. Stated conversely, a wrongdoer is guilty of gross negligence or acts wantonly and willfully only when he [or she] inflicts injury intentionally or is so utterly indifferent to the rights of others that he [or she] acts as if such rights did not exist.

*Id.* at 708. "Whether or not gross negligence exists necessarily depends on the facts and circumstances in each case[,] and is usually a question for the jury and is a question of law only when reasonable [people] could not differ as to the rational conclusion to be reached." *Id.* at 708–09 (citing *Romanesk v. Rose*, 248 Md. 420, 423 (1968)).

In assessing Defendant Batson's motion without reference to extrinsic evidence submitted in connection therewith, the Court finds that Defendant Batson is not entitled to public official immunity at this time. As an initial matter, the Court rejects Plaintiffs' blanket argument that the LGTCA "provides an express statutory waiver of immunities as applied to negligence actions[.]" (ECF No. 56 at 19). Maryland courts have held unambiguously that "the LGTCA does not waive any immunity enjoyed by 'public officials' and other similar representatives of local government against potential tort claimants." *Hansen*, 420 Md. at 680 n.5; *see also Rounds v. Md.-Nat. Cap. Park & Plan. Comm'n*, 441 Md. 621, 639 (2015). However, Plaintiffs do correctly identify that "the LGTCA grants employees immunity from damages, but not from suit. The LGTCA requires plaintiffs to bring claims directly against the employee, not indirectly against the local government." *Holloway-Johnson v. Beall*, 220 Md. App. 195, 210 (2014), *aff'd in part, rev'd in part on other grounds*, 446 Md. 48 (2016). Plaintiffs have done so here.

Plaintiffs do not oppose that Defendant Batson was a public official performing discretionary acts within the scope of his employment. In fact, Plaintiffs' Complaint alleges that Defendant Batson's conduct in this case "was at all times relevant to his employment" and "was at all times relevant hereto acting under color of state law." (ECF No. 1 at 4). The issue then becomes whether Plaintiffs have adequately pled that Defendant Batson acted with malice or gross negligence, such that his public official immunity erodes.

"Bare legal conclusions" regarding malice "are not binding on the court." *Hovatter v. Widdowson*, No. CIV.CCB-03-2904, 2004 WL 2075467, at *7 (D. Md. Sept. 15, 2004). "Even at the motion to dismiss stage, the plaintiff must allege with some clarity and precision those facts which make the act malicious." *Francis*, 2024 WL 1156407, at *22 (quotations omitted). "And, [p]laintiffs face a high standard when pleading malice because conclusory allegations are insufficient." *Id.*; *see also Elliott v. Kupferman*, 58 Md. App. 510, 528 (1984) ("To overcome a motion raising governmental immunity, the plaintiff must allege with some clarity and precision those facts which make the act malicious."). "Issues involving gross negligence are often more troublesome than those involving malice because a fine line exists between allegations of negligence and gross negligence." *Francis*, 2024 WL 1156407, at *23 (quotations omitted). Maryland courts have thus "viewed gross negligence, rather, as something more than simple negligence, and likely more akin to reckless conduct." *Id.* (quotations omitted). "The Maryland Court of Appeals 'has recognized consistently that the determination of whether a State actor enjoys State personnel immunity is a question for the trier of fact.'" *Id.* (quoting *Newell v. Runnels*, 407 Md. 578, 636 (2009), and collecting cases)

The Court agrees with Defendant Batson that Plaintiffs' Complaint contains overly conclusory allegations regarding the individual Defendants' malice, including Defendant Batson.

Plaintiffs' Complaint makes little effort to support its assertions that any of the Defendants acted with a particularly malicious intent or motive in allegedly causing Mr. Young harm other than stating at the end of various paragraphs that Defendants engaged in malicious violations of Mr. Young's rights. Accordingly, Defendant Batson's motion is granted to the extent that Plaintiffs' Complaint insufficiently pleads facts justifying an inference that he violated Mr. Young's rights or caused him harm with malice.

The Court draws the opposite conclusion regarding gross negligence, though. Plaintiffs allege that Defendant Batson was the on-duty shift commander and Defendant Robinson's direct supervisor on the day of Mr. Young's death. They further allege that Defendant Batson had a duty to properly supervise Defendant Robinson, including ensuring that Defendant Robinson was performing routine checks on those housed at DCDC. Additionally, Plaintiffs claim that Defendant Batson's failure to properly supervise Defendant Robinson both resulted in (1) Defendant Robinson falsifying medical check records under Defendant Batson's supervision and (2) Defendant Robinson's failure to perform required medical checks that would have discovered Mr. Young's suicide attempt. All these allegations are further paired with Plaintiffs' assertions that all Defendants—including Defendant Batson—were "acutely aware" of Mr. Young's "substantial risk for self-harm," yet still allegedly failed to properly supervise Mr. Young. (ECF No. 1 at 21). Accepting these allegations as true at the motion to dismiss stage, a reasonable inference can be drawn that Defendant Batson's failure to ensure that wellness checks were properly performed on Mr. Young, with knowledge that Mr. Young was at risk for self-harm, constituted indifference to Mr. Young's right to obtain proper medical treatment and supervision while in custody, which could have in turn prevented Mr. Young's suicide. Accordingly, the Court finds that Defendant Batson is not entitled to public official immunity at this time in that the

allegations against him reasonably infer gross negligence at this stage in the proceedings. This conclusion is not meant to foreclose Defendant Batson re-arguing the issue at the summary judgment stage once the parties are afforded a reasonable opportunity for discovery.

      D.  <u>Defendant Robinson's Motion to Dismiss or, in the Alternative for Summary Judgment</u>

      Defendant Robinson first argues that Plaintiffs' 42 U.S.C. § 1983 claim against him (Count I) should be dismissed because "Defendant Robinson had zero awareness that Mr. Young presented a risk of suicide until he was unresponsive in his cell when he was attempting to deliver lunch and discovered what [Mr. Young] had done." (ECF No. 41-1 at 5). More generally, Defendant Robinson argues that Plaintiffs have failed to plausibly allege a cause of action under § 1983 because Defendant Robinson had no knowledge of Mr. Young's suicidal ideations or risk to himself. *Id.* at 4–6.

        1.  *Plaintiffs' Complaint Sufficiently Alleges Constitutional Violations Under § 1983 and the Maryland Declaration of Rights*

      Plaintiffs' § 1983 claims are framed primarily as challenges under the Fourteenth and Eighth Amendments, with a potential claim under the Fourth Amendment in the alternative based on how discovery in this matter may proceed. *See* (ECF No. 57 at 15–17, 17 n.3). As is relevant for Defendant Robinson's specific argument on this issue, "[a] pretrial detainee's Fourteenth Amendment failure to protect claim" was previously "analyzed under the two-pronged inquiry set forth in *Farmer v. Brennan*, 511 U.S. 825 (1994)." *State v. Wallace*, No. 0164, Sept. term, 2021, 2022 WL 2282705, at *17 (Md. Ct. Spec. App. June 23, 2022), *cert. granted*, 482 Md. 142 (2022), *and case dismissed*, 483 Md. 262 (2023). This analysis previously required applying both an objective and subjective standard: (1) objectively, "the prisoner must be exposed to a substantial risk of serious harm"; and (2) subjectively, "the prison official must know and disregard that substantial risk to the inmate's health or safety." *Thompson v. Virginia*, 878 F.3d 89, 97–98 (4th

Cir. 2017).  However, the Fourth Circuit clarified following the Supreme Court's decision in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), that there is no longer a subjective requirement to establishing a Fourteenth Amendment violation based on a failure to protect a pretrial detainee. Rather, precedent now "repudiates a subjective requirement for pretrial detainees' Fourteenth Amendment claims and permits pretrial detainees to state Fourteenth Amendment claims . . . on the purely objective basis that the governmental action they challenge is not rationally related to a legitimate nonpunitive governmental purpose or is excessive in relation to that purpose." *Short v. Hartman*, 87 F.4th 593, 611 (4th Cir. 2023).  Under this new objective test, "[t]he plaintiff no longer has to show that the defendant had actual knowledge of the detainee's serious medical condition and consciously disregarded the risk that their action or failure to act would result in harm.  That showing remains sufficient, but it is no longer necessary.  Now, it is sufficient that the plaintiff show that the defendant's action or inaction was, in *Kingsley*'s words, 'objectively unreasonable,' that is, the plaintiff must show that the defendant should have known of that condition and that risk, and acted accordingly." *Id.* (quoting *Kingsley*, 576 U.S. at 397).

A pretrial detainee can also state a claim for failure to protect under the Fourteenth Amendment "if they can meet the more demanding Eighth Amendment standard." *Id.* at 612.  In turn, a pretrial detainee can establish an Eighth Amendment violation for failure to protect where they "state a claim for deliberate indifference to a serious medical need." *Id.*  The deliberate indifference test includes both the objective and subjective components that previously applied to Fourteenth Amendment claims. *Id.*  In other words, the Supreme Court and Fourth Circuit have recognized that a pretrial detainee's failure to protect claims are subject to two different standards depending on the constitutional amendment(s) through which they are pursued: Fourteenth Amendment violations require demonstrating only the above objective prong, whereas Eighth

Amendment violations require demonstrating both prongs.  *See id.* at 608, 612 ("The Supreme Court's ruling in *Kingsley v. Hendrickson* upends the assumption that Fourteenth Amendment Due Process claims should be treated the same as Eighth Amendment claims . . . Though the Supreme Court instructed in *Kingsley* that an objective test is proper for pretrial detainees' claims under the Fourteenth Amendment, a pretrial detainee can still state a claim if they can meet the more demanding Eighth Amendment standard.").  "The objective element requires an objectively serious medical condition."  *Id.* at 612.  "The subjective element requires that the prison official acted with deliberate indifference to inmate human health or safety, meaning that the official 'had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction.'"  *Id.* (quoting *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014)).

Here, the Court concludes that Plaintiffs' Complaint sufficiently alleges an Eighth Amendment failure to protect violation, thereby making dismissal of both Plaintiffs' Eighth Amendment and Fourteenth Amendment claims improper on this ground.  *See id.* ("[A] pretrial detainee can still state a claim [under the Fourteenth Amendment] if they can meet the more demanding Eighth Amendment standard.  In other words, satisfying the Eighth Amendment test remains sufficient, but is no longer necessary, for a pretrial detainee to state a claim[.]").  Plaintiffs' Complaint alleges that Mr. Young suffered from an objectively serious medical condition, namely that Mr. Young suffered from drug addiction, drug withdrawals, and suicidal ideation.  It further alleges that Defendant Robinson was "on actual notice that Mr. Young was detoxing and had been exhibiting suicidal behavior," along with accusations that Defendant Robinson "had actual knowledge" of Mr. Young's issues with drug addiction and suicidal ideation.  *See, e.g.*, (ECF No. 1 at 15).  Plaintiffs' Complaint also contains ample reasonable inferences regarding how Defendant

Robinson purportedly knew of Mr. Young's medical issues, including: (1) Defendant Robinson "sign[ing] off on Mr. Young's Cigarettes/Drug/Alcohol Test Results upon Mr. Young's admission into the facility" denoting that "Mr. Young had tested positive for marijuana, methadone, and morphine upon entry to the facility"; and (2) Plaintiff Kleger telephoning the DCDC "multiple times after Mr. Young was booked" during which she "voic[ed] her concerns about Mr. Young's well-being and asking if he was okay," which Defendant Robinson was purportedly aware of given that he was tasked with performing the wellness checks on Mr. Young throughout the day of his death.  (ECF No. 1 at 6–7); (ECF No. 57 at 17–18).  Finally, Plaintiffs allege that Defendant Robinson exhibited deliberate indifference to Mr. Young's medical needs because he supposedly (1) failed to assign Mr. Young to a cell that "did not have anything that could be used for self-harm"; (2) failed to properly monitor Mr. Young by checking on him too infrequently; and (3) subsequently falsified check sheet records.  (ECF No. 1 at 9–10, 16).  Although Defendant Robinson attacks the accuracy of these assertions, such arguments are better addressed at a later stage once adequate discovery has occurred.  These plausible allegations are nevertheless sufficient to justify denying Defendant Robinson's motion on this ground.[7]

---

[7] Defendant Robinson similarly argues that any claims against him stemming from alleged violations of the Maryland Declaration of Rights must also be dismissed because "Plaintiffs' state constitutional claims in Count II are construed *in pari materia* to those under the Eighth and Fourteenth Amendments in Count I."  (ECF No. 41-1 at 8).  While Defendant Robinson is correct that Plaintiffs' state constitutional claims are read *in pari materia* with Plaintiffs' federal constitutional claims through § 1983, the Court's conclusion *supra* thus equally applies to Plaintiffs' state constitutional claims and dismissal of those claims is unwarranted for the same reasons explained above.  *See, e.g.*, *Telep v. Stickney*, No. 1:23-CV-02379-JMC, 2024 WL 2114761, at *9 (D. Md. May 10, 2024) (collecting cases for the proposition that claims under the Maryland Declaration of Rights are analyzed *in pari materia* with federal constitutional claims); *Widgeon v. E. Shore Hosp. Ctr.*, 300 Md. 520, 532 (1984).

    2. *Plaintiffs' Complaint Sufficiently Alleges Compliance With the LGTCA's Notice Requirement*

Defendant Robinson further argues that Plaintiffs' Complaint should be dismissed because Plaintiffs failed to comply with the LGTCA's notice requirement.  This argument is unpersuasive for the same reasons explained *supra*.

    3. *Defendant Robinson is Not Entitled to Qualified Immunity or Public Official Immunity at This Time*

Defendant Robinson next argues that he is entitled to qualified immunity regarding Count I because "Defendant Robinson was not aware of suicide risk and did not violate Plaintiff's rights and, therefore, could not reasonably believe he was violating Mr. Young's constitutional rights and certainly not any rights that were clearly established."  (ECF No. 41-1 at 7).  Even where a plaintiff plausibly alleges or demonstrates a violation of a constitutional violation, "an official is nonetheless entitled to immunity if the right was not so clearly established that a reasonable official would understand what he is doing violates that right."  *Pfaller v. Amonette*, 55 F.4th 436, 445 (4th Cir. 2022) (quotations omitted).  "When qualified immunity is asserted, the court must consider two questions: (1) whether the facts, viewed in the light most favorable to the plaintiff, show that the official violated a constitutional right; and (2) whether the right was clearly established, that is, whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  *Skinner v. Mannino*, No. CV TDC-20-1996, 2022 WL 228232, at *4 (D. Md. Jan. 26, 2022) (quotations omitted).  "The state of the law at the time must have given an official 'fair warning' that his treatment of the prisoner was unconstitutional."  *Pfaller*, 55 F.4th at 445 (quoting *Thompson*, 878 F.3d at 98).  As the Fourth Circuit further explained in *Pfaller*:

> In performing this analysis, a court must pinpoint the precise constitutional right at issue in order to determine whether it was clearly established.  In doing so, a court must be careful not to define the right at a high level of generality because the dispositive question is whether the violative nature of *particular* conduct is clearly

established . . . And there is no requirement that the very action in question [must have] previously been held unlawful for a reasonable official to have notice that his conduct violated that right.

*Id.* at 445–46 (cleaned up) (emphasis in original).  Of particular note, the Fourth Circuit also declared that "dismissal on qualified-immunity grounds 'remains improper so long as the officers' mental state remains genuinely in issue.'"  *Id.* at 446 (quoting *Thorpe v. Clarke*, 37 F.4th 926, 934 (4th Cir. 2022)).

The Court previously concluded *supra* that Plaintiffs' allegations, if true, state plausible causes of action for violating Mr. Young's constitutional rights under at least the Eighth and Fourteenth Amendments.  And as Defendant Robinson's mental state is particularly at issue—that is, whether Defendant Robinson knew of Mr. Young's medical issues when he supposedly exhibited deliberate indifference to those medical issues in failing to protect Mr. Young— dismissal on qualified immunity grounds is improper at this time.  Further, it is "clearly established in controlling case law that deliberate indifference to medical or mental health needs of an inmate violates the inmate's constitutional rights."  *Skinner*, 2022 WL 228232, at *5 (citing *Iko v. Shreve*, 535 F.3d 225, 243 (4th Cir. 2008); *DePaola v. Clarke*, 884 F.3d 481, 486–87 (4th Cir. 2018)); *see also Gordon v. Kidd*, 971 F.2d 1087, 1094 (4th Cir. 1992), *as amended* (July 7, 1992).  It can therefore be said that the particular constitutional violations which Defendant Robinson allegedly committed were "clearly established" at the time of Defendant Robinson's alleged conduct, making dismissal on this ground unwarranted.

Finally, Defendant Robinson argues that he enjoys both common law public immunity and statutory immunity from Plaintiffs' state common law claims "based upon the absence of actual malice or gross negligence."  (ECF No. 41-1 at 9).  As noted above, common law public official immunity applies where a party demonstrates that: (1) they are a public official; (2) their tortious

conduct occurred while performing a discretionary act in furtherance of their official duties; and (3) they acted without malice (or gross negligence as expanded in *Cooper*). *Williams v. Mayor & City Council of Balt.*, 359 Md. 101, 140–41 (2000); *Cooper*, 443 Md. at 713–14. Alternatively, statutory public official immunity is described in Md. Code Ann., Cts. & Jud. Proc. § 5-507, which likewise applies where (1) a public official (2) was acting in a discretionary capacity (3) within the scope of the official's employment duties (4) without malice or gross negligence. *Id.* § 5-507(a)(1); *see also Ihnken v. Gardner*, 927 F. Supp. 2d 227, 243 (D. Md. 2013) (noting that statutory immunity under § 5-507 may be overcome where a plaintiff demonstrates gross negligence on behalf of state personnel).[8]

Plaintiffs' Complaint runs into the same issue above regarding allegations of malice against Defendant Robinson. Plaintiffs' allegations that Defendant Robinson acted maliciously are overly conclusory and not supported by reasonable inferences based on the facts as alleged in the Complaint. Defendant Robinson's motion is therefore granted to the extent that the Complaint fails to plausibly allege that Defendant Robinson acted maliciously.

However, Plaintiffs' Complaint sufficiently alleges that Defendant Robinson was at least grossly negligent. The Court reiterates again at the onset of this analysis that it rejects Plaintiffs' blanket assertion that the LGTCA's indemnification provisions operate as a waiver of immunity against negligence actions for the reasons already explained above and in *Rodwell*. *See, e.g.*, (ECF No. 57 at 26–27). Plaintiffs' Complaint sufficiently alleges that Defendants, including Defendant Robinson, were on actual notice that Mr. Young suffered from drug treatment issues and suicidal

---

[8] Defendant Robinson's motion seems to argue that the common law public official immunity analysis is distinct from the statutory public official immunity analysis. However, Maryland courts have "pointed out that the purpose of" § 5-507 "was to codify existing [common law] public official immunity, and not to extend the scope of qualified immunity beyond its Maryland common law boundaries." *Lee v. Cline*, 384 Md. 245, 258 n.2 (2004) (quotation omitted).

ideation.  It further alleges that Defendant Robinson, with such knowledge of Mr. Young's medical conditions, failed to adequately monitor Mr. Young and even falsified check records after recognizing that he failed to adequately monitor Mr. Young while in custody upon discovering Mr. Young's suicide.  These allegations, taken as true, are sufficient to permit Plaintiffs' state law claims to proceed without affording Defendant Robinson public official immunity at this stage in the litigation.  *See, e.g.*, *Romanesk*, 248 Md. at 421 ("Whether or not gross negligence exists necessarily depends on the facts and circumstances in each case.  It is usually a question for the jury and is a question of law only when reasonable men could differ as to the rational conclusion to be reached."); *Brooks v. Jenkins*, 220 Md. App. 444, 463–64 (2014).  Defendant Robinson will be afforded the opportunity to re-assert his immunity argument once additional discovery is completed.

E.  Defendant Nelson's Motion to Dismiss

1.  *Defendant Nelson's Argument Regarding Notice Under the LGTCA Is Unpersuasive*

Defendant Nelson's motion to dismiss begins by arguing for dismissal of Plaintiffs' lawsuit for failure to satisfy the LGTCA's notice requirements and "adopts and incorporates Co-Defendants' arguments on this issue[.]"  (ECF No. 47-1 at 7).  The Court therefore rejects Defendant Nelson's position for the same reasons it rejected those arguments above.

2.  *Plaintiffs' Complaint Will Not be Dismissed for Failure to Abide by the Applicable Statute of Limitations*

Defendant Nelson next argues initially in his motion to dismiss that Counts I through IV against him are barred by the applicable statute of limitations.  (ECF No. 47-1 at 7–8).  However, Defendant Nelson withdrew that argument in his reply.  *See* (ECF No. 66 at 5 ("Lt. Nelson withdraws his argument that his conduct about which Plaintiff complains falls outside the

limitations period for [Counts I through IV] against him, with the reservation of the right to re-raise the issue.").  Defendant Nelson's motion is therefore denied on this ground.

### 3. The Court Rejects Defendant Nelson's Argument that Plaintiffs' Complaint Fails to Allege Any Wrongful Conduct by Defendant Nelson

Defendant Nelson then asserts that Plaintiffs' Complaint fails to state any plausible claims against him because Defendant Nelson was unaware of Mr. Young's suicidal ideation.  (ECF No. 47-1 at 8–9).  Defendant Nelson does not reference to which specific counts this argument applies, nor does he provide further indication under which standard(s) this argument is meritorious other than claiming that Plaintiffs' Complaint fails to adequately plead Defendant Nelson's knowledge of Mr. Young's suicidal ideation.  *See generally* (ECF No. 47-1).  The Court nevertheless rejects this argument for similar reasons that warranted rejecting Defendant Robinson's argument on this issue.

Plaintiffs' Complaint alleges that Defendant Nelson was aware of Mr. Young's detoxing issues because Defendant Nelson conducted Mr. Young's drug assessment and counseling upon Mr. Young's admission to the DCDC.  The Complaint also alleges that Defendant Nelson was aware of Mr. Young's risk of self-harm.  It further alleges that Defendant Nelson was the processing shift supervisor upon Mr. Young's admission into the DCDC, and that Defendant Nelson processed Mr. Young shortly after the Emergency Order was issued and Mr. Young was brought to DCDC after arresting Mr. Young pursuant to that Emergency Order.  Taking these allegations as true at the motion to dismiss stage, a reasonable inference can be drawn that DCDC, and by extension ifs employees like Defendant Nelson, were on notice of Mr. Young's mental state and risk of self-harm when he was admitted to the DCDC.  In fact, Defendant Nelson himself admits that these facts "imply that [Defendant] Nelson had actual notice that [Mr. Young] was suicidal."  (ECF No. 47-1 at 8).  That implication appears reasonable based on the factual

allegations in Plaintiffs' Complaint and Defendant Nelson's motion is therefore denied on this ground.  To the extent that additional evidence is obtained through discovery highlighting to the contrary, Defendant Nelson may re-raise this argument as he sees fit.

### 4. *Defendant Nelson is Not Entitled to Public Official Immunity at This Time*

Defendant Nelson's final argument asserts that he is entitled to public official immunity from all common law tort claims raised against him in Counts III through VI because Plaintiffs have insufficiently pled malice.  (ECF No. 47-1 at 10–11).  The principles underlying public official immunity have already been discussed above.  The Court agrees with Defendant Nelson (just as the other individual Defendants) that Plaintiffs' Complaint contains overly conclusory allegations regarding whether Defendant Nelson acted with malice.  Defendant Nelson's motion is therefore granted to the extent that Plaintiffs' Complaint insufficiently sets forth plausible allegations of malice regarding Defendant Nelson's conduct.

The Court's inquiry does not end there, as Plaintiffs' claims against Defendant Nelson may still proceed—and Defendant Nelson would therefore not be entitled to public official immunity— if Plaintiffs' factual allegations support a plausible inference of gross negligence.  Although the Court agrees that Plaintiffs' allegations regarding malice are overly conclusory, the Court finds that Plaintiffs' Complaint sufficiently alleges that Defendant Nelson acted with gross negligence. Specifically, the Complaint alleges that Defendant Nelson had actual knowledge of Mr. Young's suicidal ideation yet failed to adequately assign Mr. Young to a cell free from risks of self-harm and facilitated the improper supervision of Mr. Young while housed at DCDC despite being armed with such knowledge.  Drawing all reasonable inferences in favor of Plaintiffs, it can be reasonably inferred based on those allegations that Defendant Nelson exhibited an utter indifference to Mr. Young's rights to be free from unreasonably dangerous conditions while housed at DCDC and/or

utter indifference to Mr. Young's right to receive adequate medical supervision and attention while housed at DCDC.  The facts of this case are not "so clear as to permit a conclusion as a matter of law" that Defendant Nelson's alleged conduct did not amount to gross negligence, and the Court declines to find that Defendant Nelson is entitled to public official immunity at this time. *McCullough v. Anne Arundel Cnty., Md.*, No. CV CCB-19-926, 2022 WL 959516, at *15 (D. Md. Mar. 30, 2022).

## IV.    CONCLUSION

For the foregoing reasons, Defendant Dorchester County's motion to dismiss (ECF No. 30) is **GRANTED IN PART** and **DENIED IN PART**; Plaintiffs' motion to waive notice (ECF No. 35) is **DENIED AS MOOT**; Defendant Batson's motion, treated as one for dismissal rather than summary judgment (ECF No. 40), is **GRANTED IN PART** and **DENIED IN PART**; Defendant Robinson's motion, treated as one for dismissal rather than summary judgment (ECF No. 41), is **GRANTED IN PART** and **DENIED IN PART**; and Defendant Nelson's motion to dismiss (ECF No. 47) is **GRANTED IN PART** and **DENIED IN PART**.  A separate Order follows.


Date: <u>July 23, 2024</u>                                   <u>          /s/          </u>
                                                                       J. Mark Coulson
                                                                       United States Magistrate Judge